# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| **JOHN HENRY RAMIREZ**, Plaintiff, <br><br> vs. <br><br> **BRYAN COLLIER**, Executive Director, Texas Department of Criminal Justice, Huntsville, Texas, <br><br> **LORIE DAVIS**, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Huntsville, Texas, <br><br> **BILLY LEWIS**, Warden, Texas Department of Criminal Justice, Huntsville, Unit, Huntsville, Texas, <br><br> Defendants. | No. 2:20-cv-205 <br><br> **This is a Capital Case.** <br><br> **Mr. Ramirez is scheduled to be executed on September 9, 2020.** |

**RELATED CASE: Civil Action No. 2:12-CV-410; The Honorable Judge v. Nelva Gonzalez Ramos**

### COMPLAINT PURSUANT TO 42 U.S.C. § 1983

Eric J. Allen
ALLEN LAW OFFICES
4200 Regent Street; Suite 200
Columbus, Ohio 43219
Tel. (614) 443-4840
eric@eallenlaw.com

Seth Kretzer
LAW OFFICE OF SETH KRETZER
440 Louisiana; Suite 1440
Houston, Texas 77002
Tel. (713) 775-3050
seth@kretzerfirm.com

*Appointed Counsel for John Henry Ramirez, Plaintiff*

## INTRODUCTION

1. On September 9, 2020, Plaintiff John Henry Ramirez is scheduled to be executed by lethal injection.

2. For approximately four years, Pastor Dana Moore has ministered to Plaintiff Ramirez. Pastor Moore is an ordained Christian minister. He is the minister at Second Baptist Church in Corpus Christi, Texas.

3. Plaintiff Ramirez wants Pastor Moore to be present in the execution chamber before and during his execution and has submitted grievance forms to posit this request.

4. According to its stated, recently amended policy regarding the presence of spiritual advisors in the execution chamber, the Texas Department of Criminal Justice ("TDCJ") intends to deny Plaintiff Ramirez's request to have a chaplain present in the execution chamber at his execution. The execution violates the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution and substantially burdens the exercise of his religious beliefs protected by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

5. Plaintiff Ramirez respectfully asks this Court to provide preliminary and permanent injunctive relief, barring TDCJ from executing Mr. Ramirez until that execution comports with the First Amendment and RLUIPA.

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, and under 42 U.S.C. § 1983.

## VENUE

7. Venue is proper under 28 U.S.C. § 1391 because Defendants Collier, Davis, and Jones maintain offices in Huntsville, Texas.

8. Defendants are being sued in their official capacities.

9. Venue is also proper because Plaintiff Ramirez's execution will occur in Huntsville, Texas.

## PARTIES

10. Plaintiff John Henry Ramirez is incarcerated under a sentence of death at the Polunsky Unit of TCDJ in Livingston, Texas. He is scheduled to be executed on September 9, 2020.

11. Defendant Bryan Collier is the Executive Director of TDCJ. He is being sued in his official capacity.

12. Defendant Lorie Davis is the Director of the Correctional Institutions Division of TDCJ. She is being sued in her official capacity. Ms. Davis is the individual the trial court ordered to carry out the execution.

13. Defendant Billy Lewis is the Senior Warden of the Huntsville Unit, which is the unit where executions take place. He is being sued in his official

capacity. Because Mr. Lewis is the Warden of the Huntsville Unit, he supervises executions in Texas.

## PROCEDURAL HISTORY

14. Plaintiff Ramirez was indicted for capital murder, convicted, and sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence on direct appeal. *Ramirez v. State*, No. AP-76,100 (Tex. Crim. App., March 16, 2011). A state writ was filed, a hearing was held, and the TCCA denied relief. *Ex parte Ramirez*, No. WR-72,735-03 (Tex. Crim. App., October 10, 2012).

15. A federal writ was timely filed, and the district court denied relief and a certificate of appealability. *Ramirez v. Stephens*, No. 2-12-CV-410 (S.D. Tex., June 10, 2015).

16. Plaintiff Ramirez filed a timely notice of appeal to the United States Court of Appeals for the Fifth Circuit. That court denied Mr. Ramirez's request for a certificate of appealability on February 4, 2016. Mr. Ramirez then requested a writ of certiorari from the Supreme Court on May 4, 2016. It denied that request on October 3, 2016.

17. The State of Texas set an execution date on February 2, 2017.

18. On January 27, 2017, Plaintiff Ramirez moved to substitute counsel and stay the execution date. This Court granted Mr. Ramirez's motion on January 31, 2017. Mr. Ramirez requested counsel and was given a briefing schedule on

February 12, 2018. On August 20, 2018, Mr. Ramirez filed a motion for relief from judgment in the United States District Court.

19. The District Court denied this motion on January 3, 2019. Plaintiff Ramirez timely filed a notice of appeal to the Fifth Circuit. The Fifth Circuit denied the request on June 26, 2019. Mr. Ramirez requested and was granted an extension to file a petition for a writ of certiorari no later than October 24, 2019. That request was granted. But the Court denied Mr. Ramirez's request to grant certiorari.

20. The State of Texas subsequently set an execution date of September 9, 2020.

## FACTUAL BACKGROUND

21. On April 2, 2019, TDCJ adopted a revised execution procedure prohibiting any religious or spiritual advisors from entering the execution chamber at the time of the execution: "TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution only from the witness rooms." Ex. 1 at 8.

22. The previous execution policy had allowed TDCJ-approved chaplains in the execution chamber, consistent with longstanding tradition in Texas and nationwide. The amendment appears to be in response to the Supreme Court's order staying an execution in *Murphy v. Collier*, 139 S. Ct. 1475 (2019). In

4

*Murphy,* the Supreme Court halted an execution after finding the TDCJ policy discriminate by denomination. In response, TDCJ changed its stated policy, not to approve spiritual advisors of all faiths but to bar all spiritual advisors.

23. Since approximately 2016, Plaintiff Ramirez has received religious counseling and spiritual advice from his spiritual advisor, Pastor Dana Moore. Mr. Ramirez wants Pastor Moore to be present at the time of his execution to pray with him and provide spiritual comfort and guidance in his final moments. Pastor Moore is willing to be in the execution chamber with Plaintiff Ramirez when he is executed.

24. When Plaintiff Ramirez is executed, Pastor Moore will pray with him. Pastor Moore need not touch Mr. Ramirez at any time in the execution chamber.

25. TDCJ previously cleared Pastor Moore to be in its execution chamber when another condemned prisoner, Joseph Christopher Garcia, was executed in December 2018.

26. Pastor Moore is willing to undergo additional security screening, if necessary, in order to be present in the execution chamber.

27. On July 13, 2020, undersigned counsel contacted Kristen Worman, General Counsel of TDCJ, through email. That email inquired about whether Ms. Worman and TDCJ had made a decision regarding the presence of Plaintiff Ramirez's minister in the execution chamber. Ex. 2.

28. On July 31, 2020, undersigned counsel followed up on his previous email. Through follow-up email, counsel informed Ms. Worman that Plaintiff Ramirez requested the presence of his Christian chaplain, Pastor Dana Moore and that Pastor Moore has ministered to Mr. Ramirez for approximately four years. The email informed Ms. Worman that TDCJ previously allowed Pastor Moore to be present in the death chamber for another condemned prisoner, Joseph Garcia. Finally, counsel informed Ms. Worman that Pastor Moore is willing to undergo additional security screening if necessary to enter the death chamber. Ex. 3.

29. At the time of filing, General Counsel Worman had not responded to undersigned counsel's emails.

30. Plaintiff Ramirez submitted a grievance to TDCJ on or about July 15, 2020. In the grievance, he requested that TDCJ allow Pastor Moore to be present in the execution chamber. TDCJ had not processed the grievance at the time of filing. It eventually should be returned to Plaintiff Ramirez with a response. Until then, Mr. Ramirez has no copy to present as an exhibit. If TDCJ responds, Mr. Ramirez can supplement this pleading.

31. Plaintiff Ramirez also submitted an I-60 Offender Request to Official on or about August 7, 2020. He directed this request to the Warden of the Polunsky Unit. In that form, Mr. Ramirez again requested the presence of Pastor Moore in

the execution chamber. The Warden has not responded to Mr. Ramirez's request. If he does, Mr. Ramirez can supplement this pleading.

## CLAIMS FOR RELIEF

33. Plaintiff Ramirez re-alleges and incorporates by reference and the allegations contained in the previous paragraphs of this Complaint.

## CLAIM ONE: FIRST AMENDMENT ESTABLISHMENT CLAUSE

33. The First Amendment to the United States Constitution commands that "Congress shall make no law respecting an establishment of religion." U.S. Const., amend. I. This command also is binding on the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

34. The Establishment Clause also forbids governmental entities from passing laws that prefer one religion over another, and it also forbids them from demonstrating hostility toward a religion. *See Larson v. Valente*, 456 U.S. 228, 246 (1982); *Zorach v. Clauson*, 343 U.S. 306, 313-15 (1952); *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947) ("Neither a State nor the Federal Government . . . can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion.")

35. TDCJ's amended policy precluding chaplains and spiritual advisors from the execution chamber violates the Establishment Clause, because the policy gives preference to non-religion while inhibiting the practice of religion. *See*

*Comm. for Public Ed. & Religious Liberty v. Nyquist,* 413 U.S. 756. 788 (1973) (noting that neutrality toward religion forbids the government from inhibiting religion).

36. Laws or policies that are not neutral between religion and non-religion are inherently suspect. *See Larson*, 456 U.S. at 246. These types of laws or policies are upheld only if they survive strict scrutiny. And strict scrutiny requires the law or policy to be narrowly tailored to achieve a compelling interest. *Id.* at 246-47.

37. In *Murphy v. Collier*, 139 S. Ct. 1475 (2019), the Supreme Court stayed an execution under TDCJ's previous execution policy. Under that policy, TDCJ followed a procedure to approve chaplains to be present in the execution chamber if they were not deemed a security threat. The Court stayed Murphy's execution, determining that the policy discriminated based on religious denomination. Afterward, TDCJ did not create a policy that applied the same clearance rules to all spiritual advisors. Instead, it chose to bar all spiritual advisors from the execution chambers. Ex. 1 at 8.

38. This amended protocol denying all spiritual advisors favors non-religious prisoners who do not want or require spiritual advisors present in the chamber at their executions.

39. The Supreme Court previously has stayed an execution under TDCJ's current execution policy. In *Gutierrez v. Saenz,* 590 U.S. __ (2020), Gutierrez

attacked TDCJ policy of not allowing any spiritual advisors into the execution chamber. He challenged that policy on First Amendment and RLUIPA grounds. The Court stayed the execution "pending the disposition of his writ of certiorari" and ordered the district court to promptly conduct fact finding on "whether serious security problems" would result from allowing a spiritual advisor of the prisoner's choice in the execution chamber.

40. Plaintiff Ramirez raises the same challenge to the execution protocol that Mr. Gutierrez did. Because the United States Supreme Court stayed Mr. Gutierrez's execution and ordered the district court to conduct further fact-finding about his challenge to the execution protocol, this Court must grant the injunctive relief Plaintiff Ramirez seeks.

41. TDCJ's intent to deny Mr. Ramirez access spiritual counseling during the moments leading up to and including his execution cannot be justified by a citation to security concerns. Any argument that security concerns justify such a burden on Mr. Ramirez's religious observance is belied by the fact that TDCJ has previously allowed Mr. Ramirez's spiritual advisor—Pastor Moore--to be in the execution chamber during the execution of another prisoner, Joseph Garcia, in December 2018. Furthermore, TDCJ cannot demonstrate that its current security and screening protocols are inadequate, or that it could not address security concerns with further screening measures, to which Pastor Moore has indicated he

is willing to submit.

## CLAIM TWO: FIRST AMENDMENT FREE EXERCISE OF RELIGION

42. The First Amendment also requires that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. Const., amend. I. Like the Establishment Clause, the Free Exercise Clause is binding on the states. *See Cantwell*, 310 U.S. at 303.

43. TDCJ's policy burdens Plaintiff Ramirez's free exercise of his Christian faith in the moments just prior to and including his execution.

44. When a state hinders a prisoner's ability to freely exercise his religion, reviewing courts must determine whether the law or policy is neutral and generally applicable. *Church of the Lukumi Balbao Aye, Inc. v. Hialeah*, 508 U.S. 520, 531 (1993). If it is neutral and generally applicable, it can have an "incidental effect of burdening a particular religious practice." *Ibid*. If it is not neutral and generally applicable, it must show a "compelling governmental interest" that is "narrowly tailored to advance that interest." *Ibid*.

45. Here, TDCJ's policy is not neutral. It is hostile toward religion, favoring non-religious prisoners over religious prisoners. If Plaintiff Ramirez was non-religious, TDCJ would grant his request to not have a religious advisor in the execution chamber. And no compelling governmental interest justifies the exclusion of Mr. Ramirez's spiritual advisor from the execution chamber, as

demonstrated by the fact that TDCJ previously allowed Pastor Moore into the chamber during Joseph Garcia's execution.

46. Any argument that security concerns constitute a "compelling governmental interest" necessitating the exclusion of Mr. Ramirez's spiritual advisor from the execution chamber withers when subjected to strict scrutiny, as the Constitution requires. This is especially true in Plaintiff Ramirez's case. Here security concerns are less than compelling in light of the fact that in 2018, TDCJ allowed Pastor Moore to be present the execution chamber during the execution of Joseph Garcia's execution. TDCJ also has previously allowed prison chaplains who have served as spiritual advisors to be present in the chamber during executions. *See Murphy*, 139 S. Ct. at 1475.

47. For these reasons, TDCJ's amended policy it violates the First Amendment's Free Exercise Clause cannot survive strict scrutiny.

## CLAIM THREE: RLUIPA

48. If this Court finds TDCJ's policy does not violate Plaintiff Ramirez's First Amendment rights, it should rule that the policy violates RLUIPA.

49. Separate and apart from the First Amendment, the Religion Land Use protects the rights of those who are incarcerated to worship as they please. does not follow First Amendment caselaw. Instead of referring to the First Amendment, the RLUIPA it defines the "exercise of religion" to include "any exercise of religion,

11

whether or not compelled by, or central to, a system of religious belief." *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (quoting 42 U.S.C. § 2000cc-5(7)(A)).

50. Even if TDCJ's amended policy does not violate the First Amendment, it violates RLUIPA because it burdens Mr. Ramirez's right to religious worship in the final moments leading up to and including his execution. Preventing Plaintiff Ramirez from religious worship with a chaplain at the end of his life and including the moment of his death substantially burdens his practice of religion. *See, e.g.*, *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (determining that where a prisoner shows the exercise of religion "grounded in a sincerely held religious belief," enforced prohibition "substantially burdens his religious exercise").

51. TDCJ has not employed the least restrictive means to further a compelling interest. TDCJ has the burden to show this defense. *See id.* at 859. In *Gutierrez*, the Supreme Court remanded for fact finding about the security issues of allowing a spiritual advisor in the execution chamber. This directive requires TDCJ to demonstrate that it has a "serious security problem" if the advisors are present. Here, TDCJ has allowed Plaintiff Ramirez's spiritual advisor into the execution chamber recently. Because it did so, TDCJ cannot plausibly claim to have such a compelling security interest when they remove a security-cleared spiritual advisor in this manner. In either event, fact finding is occurring at the

Supreme Court's direction. This Court should stay Mr. Ramirez's execution and allow this fact finding to occur. Then it can factor Mr. Ramirez's potentially unique circumstances into its finding.

52. TDCJ's amended policy places a substantial burden on Plaintiff Ramirez's practice of a sincerely held religious belief at the moment of his death, when religious observance and spiritual guidance are most critical; therefore, it violates his rights under the RLUIPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Henry Ramirez prays that this Court provide relief as follows:

1. A declaratory judgment that TDCJ's amended policy violates Mr. Ramirez's First Amendment rights under the Establishment Clause;

2. A declaratory judgment that TDCJ's amended policy violates Mr. Ramirez's First Amendment rights under the Free Exercise Clause;

3. A declaratory judgment that TDCJ's amended policy violates Mr. Ramirez's rights under RLUIPA; and

4. A preliminary and permanent injunction prohibiting Defendants from executing Mr. Ramirez until they can do so in a way that does not violate his rights.

Respectfully submitted,

/s/ Seth Kretzer

_____

Seth Kretzer
seth@kretzerfirm.com (email)
440 Louisiana , Suite 1440
(713) 775-3050 (Direct)
(713) 929-2019 (Fax)

## VERIFICATION

I, Seth Kretzer, attorney for the Plaintiff in the above-titled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

Executed on August 7, 2020.

/s/ Seth Kretzer<br>
Seth Kretzer

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the above pleading to the following, via email, on August 7, 2020:

Jennifer Morris, Esq.
Criminal Appeals Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Email: jennifer.morris@oag.texas.gov

/s/ Seth Kretzer
Seth Kretzer
